CLERK'S OFFICE U.S. DISTRICT COURT
AT HARRISONBURG, VA
FILED

7/20/23

LAURA A. AUSTIN, CLERK
BY:   s/ K Dotson
   DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

JANE DOE,

      Plaintiff

    v.

MARY BALDWIN UNIVERSITY,

      Defendant

Civil Action No.   5:23cv00047

**CIVIL COMPLAINT**

## COMPLAINT AND JURY TRIAL DEMAND

This cause of action arises from the Defendant intentionally discriminating against Plaintiff on the basis of her disability while she was attending Mary Baldwin University. Upon learning details of the nature of Plaintiff's disability and her request for an accommodation, Mary Baldwin University set out on a course to force her out of the Physician's Assistant Program. The Defendant denied Plaintiff access to educational opportunities available to non-disabled students and the resulting meaningful, happy, and productive life. This action addresses federally protected interests under the Americans with Disabilities Act and a state law cause of action for intentional infliction of emotional distress for the intentional and offensive manner in which the Defendant and its employees and agents dismissed her, despite her doing well academically even with her known challenges with ADHD and an anxiety disorder.

COMES NOW Plaintiff, JANE DOE, and wishing to remain anonymous,[1] appears by and through undersigned counsel, who hereby files this Complaint against the Defendant requesting trial by jury and alleging as follows:

## PRELIMNARY STATEMENT

1. This is an action by Jane Doe, a former student at the Defendant Mary Baldwin University, who prior to and after entering Mary Baldwin University, suffered (and continues to suffer) from Attention Deficit and Hyperactive Disorder and an anxiety disorder. She seeks damages for the actions and inactions of the Defendant for violations of her various federally protected rights and related pendant state court claims.

2. The actions and inactions of Mary Baldwin University, set forth more fully hereinafter, violate Section 504 of the Rehabilitation Act of 1973 (nondiscrimination under Federal grants and programs), and Title III (Public Accommodations and Commercial Facilities) of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*.

3. For relief, Plaintiff seeks compensatory damages for the significant emotional and financial harm caused by the Defendant and punitive damages for its treatment of her.

---

[1] Plaintiff's motion to proceed pseudonymously is forthcoming. Counsel for Plaintiff has fully communicated with the Defendant regarding the identity of Plaintiff and thus Defendant is not prejudiced by this pseudonymous filing.

## THE PARTIES

4. Plaintiff, Jane Doe, is a resident of Raleigh, North Carolina and was a student enrolled at Mary Baldwin University at all times alleged herein.

5. At all times relevant hereto, Defendant, Mary Baldwin University, (hereinafter "MBU") is a private educational institution and registered Virginia non-stock corporation located in Staunton, Virginia. Upon information and belief, MBU is a federally funded college having directly or indirectly received, made use of, and/or benefitted from such funds. MBU is properly sued under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794 (private institutions receiving federal funding), and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* & Section 12181, for the delegated and ratified decisions of its agents and/or employees made in their official capacities and/or within the scope of their employment, and for those of any final decision makers with respect to the hereinafter challenged policies, decisions, widespread habits, customs, usages and practices.

6. This court has personal jurisdiction over all parties.

## JURISDICTION AND VENUE

7. This court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) for causes arising under Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §794, and Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq; 28 U.S.C. § 2201(a) and § 2202 (declaratory relief); and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

8.  Defendant is properly sued directly under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and Title III the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., for its own and its delegated deliberately intentional or indifferent decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of statutory and state law violations and resulting injuries.

9.  This action also arises under the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Act Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, as Title III of the ADA, prohibits discrimination in the provision of services at private colleges and universities receiving federal funding. Section 202 of the Act, 42 U.S.C. § 12132, the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C. §§ 794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under § 504 to conform to the

definition of "disability" under ADA-AA. Both the ADA and §504 prohibit disability discrimination against students attending private colleges and universities.

10. Additionally, this action is properly brought under 28 U.S. Code § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

11. Further, this action is instituted under this Court's Pendent Jurisdiction to hear matters and claims related to those matters for which there is a federal claim basis. Said actions are based in Virginia tort law.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as it is the judicial district in which the Defendant resides and is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

13. Venue is also proper in the Harrisonburg Division of the United States District Court for the Western District of Virginia. *See* Rule 2(b) of the Local Rules of the United States District Court for the Western District of Virginia.

## GENERAL ALLEGATIONS

14. Plaintiff incorporates all the preceding paragraphs, including the allegations, as if they were fully set forth again at this point.

15. All allegations made herein, if not otherwise stated, are upon the information and belief of Plaintiff.

16. At all material times, MBU was receiving federal funding.

17. MBU and its employees and agents implemented and executed policies and customs regarding the treatment of students with disabilities, such as the Plaintiff herein, which did apply or should have applied, to the events complained of herein resulting in the deprivation of Plaintiff's rights as more particularly set forth herein.

18. MBU ratified the actions of its employees and/or agents who acted and/or contributed to the legal violations and injuries suffered by the Plaintiff.

19. MBU is responsible for the acts and omissions of its employees and/or agents of MBU who acted and/or contributed to the injuries suffered by the Plaintiff.

20. Title III, Section 12182 of the ADA, provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Section 12181 establishes that this applies to "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education." Private colleges and universities, including Defendant MBU, are covered by Title III of the ADA.

21. Section 7(20) of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §
    705(20) defines an individual with a disability as "any person who has a
    disability as defined in Section 3 of the Americans with Disabilities Act of
    1990." The definition for both laws is found at 42 U.S.C. Section 12102.
    The illnesses and impairments suffered by the Plaintiff qualify as a
    disability under these provisions.

22. Prior to, and after entering MBU, Plaintiff suffered from Attention Deficit
    and Hyperactive Disorder (ADHD) and an anxiety disorder, conditions
    which were known to MBU and its agents, and which are recognized
    under federal law as protected disabilities under the ADA and the other
    statutes cited herein.

23. ADHD is a mental health condition when untreated or unmitigated is
    characterized by severe substantial impacts on executive functioning such
    as learning, thinking, focusing, problem-solving, planning, and organizing.

24. Doe's unmitigated, untreated, and unaccommodated ADHD substantially
    affected her ability to learn, think, focus, problem-solve, plan, and
    organize.

25. An anxiety disorder is a mental health condition when untreated or
    unmitigated characterized by severe uncontrollable nervousness,
    increased heart rate, trembling, weakness, tiredness, difficulty
    concentrating, difficulty thinking, difficulty controlling worry, and having
    the urge to avoid things that trigger one's anxiety.

26. Doe's unmitigated, untreated, and unaccommodated anxiety substantially affected her ability to learn, think, concentrate, breathe, and control her worry.

27. Nothing about having ADHD or an anxiety disorder makes an individual unfit or unable to be a successful Physician Assistant or a successful student in any Physician Assistant educational program.

28. Prior to Doe's enrollment in the PA Program, she hoped to pursue a career in healthcare, particularly as a Physician's Assistant ("PA").

29. Mary Baldwin University owns, operates, and controls the Murphy Deming College of Health Sciences.

30. In that college, Mary Baldwin University has a Master of Science in Physician Assistant program ("PA Program").

31. At all times herein, Dr. B. Kent Diduch was an employee and agent of Mary Baldwin University and the head and director of the PA Program.

32. Dr. Diduch is a medical doctor and knowledgeable about ADHD and anxiety disorders, including their symptoms and general treatment.

33. At all relevant times herein, Jennifer Hunt was an employee of Mary Baldwin University and an associate professor in the PA Program.

34. In January 2021, Doe enrolled in the PA Program. By virtue of her experience and admission, Doe was qualified for the PA Program and possessed the background, character, and education necessary to become a competent PA.

35. Throughout her enrollment in the PA Program, Doe remained qualified for the PA program and possessed all the characteristics necessary to become a competent PA.

36. Doe informed Mary Baldwin University about the above health conditions and provided it with medical documentation.

37. Mary Baldwin University determined that Doe had a disability that satisfied the definitions of an individual with a disability defined in the relevant parts of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

38. Mary Baldwin University determined that Doe's disability rendered her eligible for reasonable accommodations and modifications to its educational program, including fifty percent of extended time for all quizzes and examinations.

39. While enrolled in the PA Program, Doe did well on her written exams, quizzes, class projects, classroom work, and other assignments.

40. In March of 2022, Doe had increased health difficulties related to her disabilities.

41. Doe requested a disability accommodation from MBU of a temporary leave of absence for health reasons caused by her disability in March of 2022. She supported this request by having her psychiatrist send documentation to Mary Baldwin University in March of 2022.

42. MBU granted this accommodation. It excused Doe from all school and PA Program responsibilities until April 25, 2022.

43. Dr. Diduch and Professor Hunt were aware and otherwise had knowledge of Doe's disability and the reasons for her medical leave accommodation by March of 2022.

44. Dr. Diduch unilaterally created an 11-page, single-spaced make up schedule for Doe and gave Doe no choice but to accept it ("accelerated plan").

45. Knowing of Doe's disabilities and accommodations, rather than give her extended time, Dr. Diduch compressed and accelerated Doe's educational program in this accelerated plan.

46. In writing, Dr. Diduch called this accelerated plan "a very tall mountain to climb" and also said that the accelerated plan given to Doe was so much work that even he probably could not complete it within the time given. Despite this negativity, Doe was able to complete the entire accelerated plan within the time constraints.

47. This accelerated program required Doe to complete work at a rate and pace faster than non-disabled students in the PA Program.

48. Dr. Diduch created this accelerated plan to force Doe to withdraw from or leave the PA Program.

49. For example, as part of the PA Program, each PA student had to complete a group community practicum project. Prior to her medical leave, Doe's

community practicum group had substantially completed their community practicum project. The group, of which Doe was an equal part, received a grade of 97%. Dr. Diduch and Professor Hunt made her undertake and complete an entirely new community practicum project from scratch involving creating, recruiting all donors for, and hosting a Blood Drive. During Doe's medical leave, this new community practicum project required her to commute back and forth from North Carolina to MBU, which took substantial time and effort. Doe was told that she needed to have at least 30 donors sign up for the Blood Drive or she would not receive a passing grade on the community practicum project. As a result of Doe's efforts, and without help from the PA faculty, Doe was able to sign up more than 30 donors for the Blood Drive program. None of Doe's PA classmates were given such a requirement or ultimatum in order to pass their community practicum project.  In summary, Doe and her three other classmates had to each complete 25% of a group practicum project , while Doe had to complete 100% of an additional and separate community practicum project on her own after her medical leave.

50. Doe nonetheless completed and successfully passed all the work in the accelerated plan by the first week of July 2022.

51. Prior to her accommodation request of a temporary leave of absence, the staff of the PA Program, including Dr. Diduch and Professor Hunt, said

positive and encouraging things to Doe. They informed her that she was doing well in and successfully completing her studies up until that time.

52. After she made her accommodation request and disclosed increased details about her disability in March of 2022, Dr. Diduch and Professor Hunt, for the first time, began telling Doe that she should withdraw from the PA Program.

53. From April of 2022 until August 2, 2022, Dr. Diduch, Professor Hunt, and agents and employees of Mary Baldwin pervasively told Doe to withdraw from the program, despite Doe received passing and sometimes impressive grades on all of her written exams and projects during this time.

54. Despite Doe's continued success, Dr. Diduch and Professor Hunt failed to compliment Doe on her good work and repeatedly pushed her to withdraw from the PA program. For example, this conduct included but was not limited to the below incidents. Dr. Diduch emailed Doe on April 8, 2022 and said she should withdraw from the PA Program. On May 2, 2022, in an in-person meeting, Dr. Diduch told Doe she needed to withdraw from the PA Program. In a June 6, 2022 virtual meeting, Dr. Diduch had expressed continued negativity and pessimism to Doe about her ability to remain in the PA Program. In a July 2, 2022 in person meeting with Dr. Diduch and Professor Hunt, they told her she should withdraw from the PA Program.

55. All of the above examples occurred despite Doe working through and successfully completing the tasks in the accelerated plan.

56. In 2022, Doe was enrolled in a class in the PA Program that required her to pass Objective Structured Clinical Examinations (referred to as "OSCEs").

57. Despite having approved disability accommodations for all examinations, Professor Hunt and other employees at MBU and in the PA Program repeatedly told Doe that Professor Hunt and MBU would not provide Doe with any additional time for her OSCEs.

58. Mary Baldwin University provided OSCEs review and preparatory sessions for all other students in Doe's class. It did not offer them to Doe.

59. On July 20, 2022, Professor Hunt administered a first OSCEs to Doe.

60. The OSCEs is an exam that is given at the conclusion of the didactic phase of the PA program. All students are given the OSCE examination over two days, with 7 stations in day one and 7 stations in day two. MBU and the PA program knew of Doe's disability and approved accommodations.

61. Dr. Diduch and Professor Hunt provided no accommodations for Doe and required Doe to sit for all 14 stations of the OSCE in a single day, with one single 30-minute break after the first 7 stations. In other words, Doe was again required to perform in a manner that was not required of her non-disabled classmates.

62. Despite this, Doe in fact passed her first OSCEs.

63. On July 21, 2022, Professor Hunt and Dr. Diduch, in a video conference, informed Doe that she failed the first OSCEs. Professor Hunt and Dr. Diduch were negative regarding Doe's performance in the first OSCEs, but they never provided her with a record of the actual scores.

64. During this meeting, Doe briefly saw some scores on her computer screen that suggested she failed to pass by the slimmest of margins. Despite this, Dr. Diduch and Professor Hunt again pushed Doe to withdraw from the PA program and not sit for the final OSCE retake exam. Dr. Diduch and Instructor Jennifer Hunt never provided Doe with any written evidence of her grades or performance on this OSCEs.

65. Doe had in fact passed this first OSCEs held on July 20 and Professor Hunt and Diduch falsely claimed she had failed in order to force her out of the program.

66. It is the policy of the PA program to provide each PA student who fails the first OSCEs an additional six weeks of time between their first OSCEs and their retake OSCEs in order to provide the student with sufficient time to prepare for the retake.

67. Despite this policy, and despite the fact that Doe has a disability known to MBU and the PA program, Doe was not given six weeks to prepare for the retake exam. Doe was given only 12 days to prepare for the retake exam.

68. Dr. Diduch had sent an email to Doe on April 8, 2022 informing her that she would be given six weeks of remediation and review time prior to any OSCEs retake.

69. Dr. Diduch and MBU refused to provide the six-week review time it gave to non-disabled students to force Doe out of the PA Program.

70. Mary Baldwin University scheduled Doe's second OSCEs attempt for August 2, 2022, only 12 days after her first attempt.

71. No student in the PA Program who had passed all of their written coursework and other exams, such as Doe, had ever been given a failing grade on their second or retake OSCEs attempt.

72. Doe had passed all of her written coursework and exams up to this point in the PA Program. The OSCEs were the only remaining requirement for Doe to pass and complete the didactic portion of the PA Program. The OSCE was also the only remaining requirement that Dr. Diduch and Professor Hunt could subjectively use to remove Doe from the PA Program.

73. On August 2, 2022, Professor Hunt administered the retake OSCEs.

74. On August 4, 2022, Dr. Diduch informed Doe that she had not passed the second or retake OSCEs.

75. MBU has never provided Doe with any written evidence of her grade or performance on the first or second OSCEs.

76. Doe either passed the second OSCEs or that Dr. Diduch and Professor Hunt and/or MBU altered, falsified, or misgraded the second OSCEs to remove her from the PA Program.

77. On or about August 5, 2022, Doe informed MBU by email that she believed she had been discriminated against due to her disability and that the dismissal from the PA Program was because of her disability.

78. By letter dated September 2, 2022, Mary Baldwin University dismissed Doe from the PA Program.

## COUNT I: Intentional Disability Discrimination in Violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act

79. Plaintiff incorporates by reference all the preceding paragraphs, including the allegations, if they were set forth again at this point.

80. In using the term "because" in this count, "because" should be interpreted to mean both the legal causation standard found in the ADA and any different causation standard found in the Rehabilitation Act (e.g., "solely because of").

81. Upon learning of details about Doe's disability around March of 2022, Dr. Diduch, Professor Hunt, and MBU determined that Doe should not be a Physician Assistant or a student in the PA Program and must be removed.

That decision was made without giving Doe a chance to prove she could actually complete the program.

82. MBU, through its agents and employees, thus stereotyped Doe and persons with ADHD and anxiety as being unable or unfit to be a Physician Assistant or a successful student in the PA Program. This is intentional discrimination against disabled students and a policy of one as well.

83. MBU constantly encouraged and asked Doe to withdraw from the program because of her disability from early April to August of 2022.

84. Doe persisted and successfully completed all academic requirements asked of her.

85. Knowing of Doe's disabilities, MBU and Dr. Diduch designed an accelerated program that it believed Doe could not complete in an effort to drive her out of the program because of her disability.

86. MBU altered the OSCE format and forced Doe, who it knew had ADHD and anxiety, to take all 14 subsections or stations of the test in a single day when non-disabled students only took seven subsections per day over two days. MBU altered the OSCE format to drive Doe out of the program because of her disability.

87. The MBU Accessibility Office reviewed Doe's disabilities and required that she be given 50% extra time on all exams. The PA Program gave Doe 50% extra time on written exams, but refused to give Doe 50% extra time on in person exams such as the OSCEs. MBU denied this accommodation

for Doe on both of her OSCEs in order to drive her out of the PA Program because of her disability.

88. Knowing of Doe's disabilities, MBU falsely claimed and reported that Doe had not passed either of her OSCEs.

89. MBU refused to document in writing to Doe her actual scores and results in order to hide its false claims that she did not pass either of her OSCEs.

90. Professor Hunt and/or MBU altered, falsified, or intentionally misgraded one or both of Doe's OSCEs to dismiss her from the PA Program because of her disability.

91. These actions and omissions violated both Title III of the ADA and the Rehabilitation Act.

92. These actions and omissions by MBU, its agents, and its employees were intentional or deliberately indifferent to its known conduct that was severe or pervasive enough to deprive Doe of equal access to MBU's educational programs or activities.

93. As a direct and proximate cause of the foregoing, Doe has been damaged as more particularly set for forth herein. In addition, the actions and omissions of MBU were knowingly and sufficiently severe enough to entitle the Plaintiff to punitive damages.

94. For a violation of Title III of the ADA, Doe requests all the damages permitted by 42 U.S.C. § 12203 and 42 U.S.C. § 12188, including but not

limited to injunctive relief, attorneys' fees and costs, and expert witness fees.

95. For a violation of Section 504 of the Rehabilitation Act, Doe requests all the damages permitted by 29 U.S.C. § 794a(a)(2), including but not limited to compensatory damages, lost pay, lost tuition, tuition reimbursement, attorneys' fees, expert witness fees, medical expenses, loss of potential future employment, and loss of potential future earnings.

## Count II—Hostile Educational Environment

96. Plaintiff incorporates paragraphs 1 through 78, including the allegations, as if they were fully set forth again at this point.

97. In using the term "because" in this count, "because" should be interpreted to mean both the legal causation standard found in the ADA and any different causation standard found in the Rehabilitation Act (e.g., "solely because of").

98. Title III of the ADA provides disabled students of a private school with a valid cause of action based on a hostile educational environment.

99. Section 504 of the Rehabilitation Act provides disabled students of a private school that received federal financial assistance with a valid cause of action based on a hostile educational environment.

100. Doe was performing well in the PA School prior to her medical leave in March 2022.

101.   until she disclosed details about her disabilities to MBU, Dr. Diduch, Professor Hunt, and the agents and employees of the PA Program.

102.   Doe also performed well in the PA program after her medical leave.

103.   However, after Doe's medical leave, agents and employees of MBU intentionally, repeatedly, and pervasively tried to force Doe to withdraw from the PA program.

104.   From March through August, agents and employees of MBU constantly and pervasively informed Doe that she would not be able to successfully complete the PA Program.

105.   Once Dr. Diduch and Professor Hunt learned about the details of Doe's disability, they each determined Doe should not be a Physician's Assistant and should not be a student in the PA Program.

106.   From March through August, agents and employees of MBU constantly and pervasively informed Doe that she would not be able to successfully complete the PA Program.

107.   Dr. Diduch and MBU forced an accelerated educational plan upon Doe after her medical leave, believing that she would not be able to successfully complete the accelerated plan in the time allotted.

108.   Professor Hunt and MBU altered the normal OSCE exam in such a way as to force Doe to fail or make it harder for her to pass than other students.

109.   Professor Hunt, Dr. Diduch, and MBU altered, falsified, or misgraded one or both of Doe's OSCEs to remove her from the PA Program because of her disability.

110.   Dr. Diduch, Professor Hunt, and MBU used their power and authority to make Doe's time in the Program from March to August of 2022 as difficult as possible so that either she would withdraw from the program or they would find a way to dismiss her from the program. When Doe did not withdraw, they illegally used the OSCE exam to dismiss Doe from the PA Program.

111.   All of the actions or omissions alleged in this count were done because of or on the basis of Doe's known disabilities.

112.   These actions and omissions by MBU, its agents, and its employees were intentional or deliberately indifferent to its known conduct that was severe or pervasive enough to deprive Doe of equal access to MBU's educational programs or activities.

113.   For a violation of Title III of the ADA, Doe requests all the damages permitted by 42 U.S.C. § 12203 and 42 U.S.C. § 12188, including but not limited to injunctive relief, attorneys' fees and costs, and expert witness fees.

114.   For a violation of Section 504 of the Rehabilitation Act, Doe requests all the damages permitted by 29 U.S.C. § 794a(a)(2), including but not limited to compensatory damages, lost pay, lost tuition, tuition

reimbursement, attorneys' fees, expert witness fees, medical expenses, loss of potential future employment, and loss of potential future earnings.

## **Count III—Retaliation**

115.   Plaintiff incorporates paragraphs 1 through 78, including the allegations, as if they were fully set forth again at this point.

116.   In using the term "because" in this count, "because" should be interpreted to mean both the legal causation standard found in the ADA and any different causation standard found in the Rehabilitation Act (e.g., "solely because of").

117.   Title III of the ADA provides disabled students of a private school with a valid cause of action for retaliation, *see* 42 U.S.C. § 12203.

118.   Section 504 of the Rehabilitation Act provides disabled students of a private school that received federal financial assistance with a valid cause of action based for retaliation.

119.   In March of 2022, Doe requested a temporary medical leave of absence as an accommodation or modification needed due to her disabilities.

120.   MBU granted this accommodation or modification.

121.   Under Title III of the ADA and Section 504 of the Rehabilitation Act, requesting an accommodation or modification, and providing medical information to support such a request, is a protected act and covered

private schools may not retaliate against or on the basis of those protected acts.

122.   Upon receiving Doe's request for an accommodation or modification in March of 2022 and supporting medical information, MBU and its agents and employees decided to try and force Doe out of the PA program because of her request and the supporting medical information.

123.   Once Dr. Diduch and Professor Hunt learned of Doe's disability accommodation request for a temporary medical leave, they each determined Doe should not be a Physician's Assistant and should not be a student in the PA Program.

124.   From March through August, agents and employees of MBU constantly and pervasively told Doe that she needed to withdraw from the PA Program.

125.   MBU's agents and employees encouraged Doe to withdraw before giving her any meaningful chance at completing the PA Program after MBU learned in detail about Doe's disabilities.

126.   From through August, agents and employees of MBU constantly and pervasively informed Doe that she would not be able to successfully complete the PA Program.

127.   Dr. Diduch and MBU forced an accelerated plan of education upon Doe believing that, with her disabilities, she would not be able to successfully complete the plan or the PA Program.

128.   Professor Hunt and/or MBU altered, falsified, or misgraded one or both of Doe's OSCEs to remove her from the PA Program because of her disability.

129.   Professor Hunt, Dr. Diduch, and MBU falsely reported that Doe had failed both OSCEs when she had in fact passed them.

130.   Dr. Diduch, Professor Hunt, and MBU used their power and authority to make Doe's time in the Program from March to August of 2022 as difficult as possible so that either she would withdraw from the program or they would find a way to dismiss her from the program.

131.   These actions and omissions by MBU, its agents, and its employees were intentional or deliberately indifferent to its known conduct that was severe or pervasive enough to deprive Doe of equal access to MBU's educational programs or activities.

132.   For a violation of Title III of the ADA, Doe requests all the damages permitted by 42 U.S.C. § 12203 and 42 U.S.C. § 12188, including but not limited to injunctive relief, attorneys' fees and costs, and expert witness fees.

133.   For a violation of Section 504 of the Rehabilitation Act, Doe requests all the damages permitted by 29 U.S.C. § 794a(a)(2), including but not limited to compensatory damages, lost pay, lost tuition, tuition reimbursement, attorneys' fees, expert witness fees, medical expenses, loss of potential future employment, and loss of potential future earnings.

## **Count IV—Failure to Provide an Accommodate or Modification**

134.   Plaintiff incorporates paragraphs 1 through 78, including the
allegations, as if they were fully set forth again at this point.

135.   In using the term "because" in this count, "because" should be
interpreted to mean both the legal causation standard found in the ADA
and any different causation standard found in the Rehabilitation Act (e.g.,
"solely because of").

136.   Title III of the ADA requires private schools to make reasonable
accommodations or modifications to its programs, policies, decisions,
habits, customs, usages, and practices so that disabled students have
equal opportunities as do non-disabled students.

137.   Section 504 of the Rehabilitation Act also requires private schools that
receive federal financial assistance to make reasonable accommodations
or modifications to its programs, policies, decisions, habits, customs,
usages, and practices so that disabled students have equal opportunities
as non-disabled students.

138.   MBU recognized Doe as a student who was entitled to receive
accommodations and modifications under the ADA and the Rehabilitation
Act.

139.   MBU formally granted Doe the accommodation and modification of
50% extra time on examinations and quizzes.

140.   Doe was informed by Professor Hunt that she would never receive extra time on her OSCEs in spite of the fact that MBU's Accessibility Office had granted her 50% extra time on all exams and quizzes.

141.   Doe was never told why she would not receive any accommodations on her OSCEs or provided with any opportunity to engage in an interactive process to discuss what accommodations or modifications might otherwise be reasonable during her OSCEs.

142.   When Professor Hunt administered the two OSCEs, she did not provide Doe with any extra time.

143.   To the extent that Doe did not pass any OSCEs due to not finishing a subsection in time, Doe required extra time because of her disabilities and as recognized by MBU.

144.   The OSCEs are not a test created by a third-parties or otherwise standardized across geographic locations.

145.   The OSCEs administered to Doe were created by, and time limits set by, MBU through its agents and employees.

146.   MBU thus failed to accommodate or modify its programs, policies, and educational opportunities to the known and accepted disabilities of Doe.

147.   The conduct, acts, and omissions of Dr. Diduch, Professor Hunt, and MBU in failing to provide an accommodation or modification for Doe in violation of federal law were intentional.

148.   This failure is a violation of Title III of the ADA and Section 504 of the Rehabilitation Act.

149.   For a violation of Title III of the ADA, Doe requests all the damages permitted by 42 U.S.C. § 12203 and 42 U.S.C. § 12188, including but not limited to injunctive relief, attorneys' fees and costs, and expert witness fees.

150.   For a violation of Section 504 of the Rehabilitation Act, Doe requests all the damages permitted by 29 U.S.C. § 794a(a)(2), including but not limited to compensatory damages, lost pay, lost tuition, tuition reimbursement, attorneys' fees, expert witness fees, medical expenses, loss of potential future employment, and loss of potential future earnings.

**Count V—Intentional Infliction of Emotional Distress**

151.   Plaintiff incorporates all the preceding paragraphs, including the allegations, as if they were fully set forth again at this point.

152.   MBU knew of Doe's disabilities and how they affected her.

153.   The conduct of MBU, by and through the conduct, acts, and/or omissions of its employees and/or agents was intentional.

154.   The conduct of MBU, by and through the conduct, acts, and/or omissions of its employees and/or agents was intended to inflict emotional harm and distress or should have known emotional harm and distress would likely result.

155.   The conduct of MBU, by and through the conduct, acts, and/or omissions of its employees and/or agents was outrageous and intolerable so as to offend generally accepted standards (and go above all the bounds) of decency and morality of today's society.

156.   As a result of MBU's conduct, Doe's emotional distress is severe.

157.   Due to MBU's conduct, Doe's anxiety has increased and made daily functioning difficult.

158.   MBU's conduct caused the above emotional distress.

159.   Doe's dream was to become a Physician's Assistant.

160.   MBU's actions and statements were designed to crush those dreams and inform her she was unfit for that career because of her disability. They engaged in fraudulent acts to force her out of the PA Program.


**DAMAGES**

161.   The acts or omissions of the Defendant and its agents and employees proximately caused the Plaintiff's injuries.

162.   The acts or omissions of the Defendant as described herein intentionally, or with reckless disregard, deprived Plaintiff of her federal rights and caused him additional special damages.

163.   The Defendant at all times relevant hereto was acting pursuant to MBU custom, policy, decision, widespread habit, or bias in their actions pertaining to Plaintiff and were therefore acting within the course and

scope of their employment and/or agency with or for MBU and ratified by MBU.

164.   As a direct and proximate result of the actions, inactions and matters complained of herein, the Plaintiff has been damaged and is entitled to recovery for said damages, whether they be compensatory, general, special, or otherwise. These damages include, but are not limited to:

    a.  Medical treatment for continued therapy;

    b.  Emotional injuries and suffering;

    c.  Loss of potential future employment;

    d.  Loss of potential future earning;

    e.  Loss of reputation;

    f.  Humiliation;

    g.  Loss of tuition and years of study;

    h.  Attorneys' fees and costs; and

    i.  Expert witness fees and costs.

165.   In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages in that the actions of the Defendant had been taken maliciously, willfully or with a reckless or wanton disregard of the Plaintiff's statutory rights and Plaintiff's medical conditions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against the Defendant, as follows:

166. Plaintiff prays that this Court enter judgment for the Plaintiff and against the Defendant and grant:

    a. compensatory damages in excess of $75,000 for Plaintiff's psychological and emotional distress and damages, loss of standing in his community, damage to her reputation, and her family's out of pocket expenses incurred in response to these circumstances, her loss of tuition, costs of future education and rehabilitation;

    b. economic losses on all claims allowed by law;

    c. punitive damages on all claims allowed by law against the Defendant and in an amount to be determined at trial;

    d. attorneys' fees and the costs associated with this action under the ADA and/or Rehabilitation Act, including expert witness fees, on all claims allowed by law;

    e. pre- and post-judgment interest at the lawful rate; and

    f. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

167. Plaintiff prays that this Court enter injunctive relief requiring MBU to take effective steps to prevent future discrimination against disabled students; fully investigate conduct that may constitute discrimination against disabled students; appropriately respond to all conduct that may

be disability discrimination by providing, at the very least, appropriate

accommodations to said individuals.

168.   Plaintiff requests a trial by jury.


                                         Respectfully submitted,
                                         Jane Doe
                                         By counsel

/s/ Charles M. Henter
Charles M. Henter, Esq. (VSB No. 45459)
HenterLaw PLC
609 East High Street
Charlottesville, Virginia  22902
Telephone    (434) 817-1840
*Attorney for Plaintiff*